**ALLEN, ALLEN, ALLEN & ALLEN, et al., Plaintiffs,**

v.

**Barbara WILLIAMS, in her official capacity as Bar Counsel of the Virginia State Bar, Defendant.**

**No. CIV.A. 3:02CV632.**

United States District Court, E.D. Virginia, Richmond Division.

March 19, 2003.

testimony submitted following the second *Daubert* hearing.

Thomas Winfield Williamson, Jr., Williamson & Lavecchia LC, Rodney Alan Smolla, T.C. Williams School of Law, University of Richmond, Richmond, VA, for Allen, Allen, Allen & Allen, W. Coleman Allen, Jr., plaintiffs.

Kevin Osborne Barnard, Office of the Attorney General, Richmond, VA, for Virginia State Bar, Barbara Williams, in her official capacity as Bar Counsel of the Virginia State Bar, defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on the defendant's motion to dismiss and the plaintiffs' motion for a preliminary injunction.

The plaintiffs, Allen, Allen, Allen & Allen, and W. Coleman Allen, Jr. (hereinafter

collectively referred to as "the Allens," "the Allen Firm," or "plaintiffs"), brought this suit against the defendant, Barbara Williams, in her capacity as Bar Counsel of the Virginia State Bar (for simplicity, the Court refers to the individual defendant and the entity the Virginia State Bar as "the Bar" or "defendant"), pursuant to 42 U.S.C. § 1983. The Allens challenge the constitutionality of Rule 7.1(a)(3) of the Virginia Rules of Professional Conduct as applied by the Bar's Standing Committee on Lawyer Advertising in its Legal Advertising Opinion A–0114. The Allens seek a declaratory judgment that their advertisements are expression protected by the First Amendment and that any attempt by the Bar to enforce Rule 7.1(a)(3) against the plaintiffs for the advertisements at issue would violate the First Amendment. They also seek an injunction ordering the Bar to withdraw the offending advisory opinion and permanently enjoining the Bar from enforcing Rule 7.1(a)(3) against the plaintiffs for these advertisements.

In their motion for a preliminary injunction, the Allens ask this Court to enjoin the Bar from enforcing Rule 7.1 against the Allen Firm for its past and future advertising of the material set forth in paragraph 11 of its complaint pending the conclusion of this litigation. Paragraph 11 recites the text of three advertisements currently in use by the Allen Firm. The defendant moves to dismiss this lawsuit pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that this Court lacks subject matter jurisdiction over the controversy and that the plaintiffs' complaint and supplemental complaint [1] fail to state a claim upon which relief may be granted.

Oral argument on the motion to dismiss and motion for a preliminary injunction was heard on February 20, 2003. After supplemental briefing, these matters are ripe for decision. For the reasons that follow, the defendant's motion to dismiss is denied and the plaintiffs' motion for a preliminary injunction is granted.

## I. *FACTS*

### A. **The Bar's structure for reviewing advertisements and the disciplinary process**

The Virginia State Bar is an administrative agency of the Supreme Court of Virginia and is responsible for regulating the legal profession in the Commonwealth, including monitoring legal advertising and enforcing the Virginia Rules of Professional Conduct promulgated by the Supreme Court of Virginia. Va.Code § 54.1–3910. The Virginia Rules of Professional Conduct is the code of ethics that governs lawyers in Virginia, and Rule 7.1 pertains to advertising.[2] The portion of that Rule relevant to this litigation states:

(a) A lawyer shall not, on behalf of the lawyer or any other lawyer affiliated with the lawyer or the firm, use or participate in the use of any form of public communication if such communication contains a false, fraudulent, misleading, or deceptive statement or claim. For

---

[1]. The plaintiffs filed their complaint on September 3, 2002. Because of developments that occurred after filing the complaint, the plaintiffs submitted a supplemental complaint on January 24, 2003. Throughout this opinion, the Court's references to the "complaint" refer to both the complaint and supplemental complaint together. If citing a specific paragraph in the complaint or supplemental complaint, the Court's citation refers to the specific document.

[2]. Since the filing of this lawsuit, Rule 7.1 was revised and split into Rule 7.1 and 7.2. The relevant language of the former Rule 7.1 has not changed, and the Court refers to the relevant rule as "Rule 7.1" or "Rule 7.1(a)(3)."

example, a communication or advertisement violates this Rule if it:

. . .

(3) compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated.

S.Ct. of Va. R., Part Six, § II, Rule 7.1(a)(3).

The powers of the Bar are exercised by its Council, which has general administrative responsibility for the disciplinary system of the Bar. S.Ct. of Va. R., Part Six, § IV, ¶ 5, 13.B.2.a. Responsibility for monitoring the advertising of lawyers in Virginia has been delegated by the Council to the Standing Committee on Lawyer Advertising and Solicitation ("SCOLA"). *Id.* at ¶ 10. In carrying out that responsibility, SCOLA performs three functions that are particularly relevant to this litigation. First, SCOLA is available to pre-screen advertisements to ensure compliance with the Rules of Professional Conduct. (SCOLA Mission Statement, *http://www.vsb.org/committees/standing/advertising/index.html*, Pls.' Br. Opp. Mot. Dismiss, Ex. A.) Any lawyer may voluntarily submit an advertisement to SCOLA for review prior to it being published or broadcast. *Id.* Second, SCOLA independently monitors lawyer advertising for compliance with the Rules. This function of SCOLA is summarized in the Committee's mission statement as follows:

The committee meets regularly to review yellow pages, radio, television and Internet advertising and issues non-compliance letters to those lawyers whose advertising appears to violate the rules. Typically the lawyers receiving such letters voluntarily comply with the committee's suggestion to rectify the problems identified with their advertising. In those few instances where a lawyer disagrees with the committee's interpretation of the rules, the matters are referred to the disciplinary department of the bar.

(SCOLA Mission Statement, Pls.' Br. Opp. Mot. Dismiss, Ex. A.) SCOLA requires lawyers and firms to retain copies of their advertisements to be made available to SCOLA for this purpose upon request. S.Ct. of Va. R., Part Six, § II, Rule 7.1(b).[3]

The third function of SCOLA important to this litigation is the issuance of written legal advertising opinions. Any member of the Bar may request an advisory opinion on a particular issue by submitting a written request to SCOLA. S.Ct. of Va. R., Part Six, § IV, ¶ 10(b)(i). The request must be in the form of a hypothetical, but it may include the specific advertisement in question. *Id.* at ¶ 10(b)(ii). Any such request is reviewed by the Bar's Ethics Counsel who determines whether to refer the request to the Committee. Once the Committee reviews the request and determines that it presents an unresolved issue, the Committee shall issue an advisory opinion. *Id.* at ¶ 10(c)(i). "The Committee may in its discretion decline to render an opinion regarding any matter which is currently the subject of any disciplinary proceeding or litigation or which presents an issue beyond its purview." *Id.* at ¶ 10.(c)(ii). The Committee may publish the advisory opinion informally or transmit it to the Bar's Council for approval, modification, or disapproval. *Id.* at ¶ 10(c)(iii). Even if the Committee chooses not to submit the opinion to the Council for consideration, any party who filed the request for the opinion, if dissatisfied with the result, may appeal the Committee's opinion to the Council. *Id.* at ¶ 10(c)(v). No advisory opinion has any binding legal effect until it is approved by the Council and ultimately by the Supreme Court of Virginia. *Id.* at ¶ 10(c)(vi), (f)(iv), (g)(iv). When advisory

---

**3.** Former Rule 7.1(b) is now Rule 7.2(b).

opinions are submitted to the Council, the Bar must issue a press release and allow for public comment in accordance with the Rules of the Supreme Court of Virginia. *Id.* at ¶ 10(d), (e). The Attorney General of Virginia shall also file written comments analyzing whether adoption of the opinion would result in a restraint on competition. *Id.* at ¶ 10(e)(ii). Upon review of an opinion, the Council may approve, modify, or disapprove it. *Id.* at ¶ 10(f). If an opinion is approved or modified, it may be published as an advisory opinion or transmitted to the Supreme Court of Virginia for further review. *Id.* A similar process of publication and allowance for public comment is required before the Supreme Court of Virginia's review. *Id.* at ¶ 10(g). Like the Council, the Supreme Court of Virginia may approve, modify, or disapprove an opinion. *Id.* at ¶ 10(g)(iv). Once the Supreme Court of Virginia reviews an opinion and either approves or modifies it, the opinion becomes a binding decision of the Supreme Court of Virginia. *Id.*

Whether an opinion remains advisory or becomes a binding opinion of the Supreme Court of Virginia, it may result in a lawyer being subjected to disciplinary action. Under the administrative oversight of the Council, all disciplinary proceedings are investigated and prosecuted by Bar Counsel. *Id.* at ¶ 13.B.2.a, 13.B.7.a. In performing her prosecutorial functions, Bar Counsel is to "act independently and exercise prosecutorial autonomy and discretion." *Id.* at ¶ 13.B.7.a(1). Bar Counsel is bound by the terms of an advertising opinion only if it has been approved by the Supreme Court of Virginia, *id.* at ¶ 10(g)(iv), but completing all stages of review of an advisory opinion is not a prerequisite for a disciplinary complaint. *Id.* at ¶ 13. As revealed in its mission statement, SCOLA's review of advertisements, whether as part of its independent monitoring function or in response to a request for an advisory opinion, may result in a referral for disciplinary proceedings if SCOLA determines that an advertisement fails to comply with the Rules and the lawyer or firm fails to modify the advertisement in accordance with SCOLA's request. (Pls.' Br. Opp. Mot. Dismiss, Ex. A.) In addition to complaints that are referred from SCOLA, complaints may be filed by any member of the public or by other attorneys, and they may be referred from other Bar committees. S.Ct. of Va. R., Part Six, § IV, ¶ 13. Bar Counsel reviews all complaints of misconduct filed with the Bar, and she determines the level of investigation they warrant, if any, and whether to file and prosecute a complaint. *Id.* at ¶ 13.C. Even without the filing of a complaint, Bar Counsel may institute disciplinary proceedings on her own. *Id.* at ¶ 7.a.(1).

## B. The Allens' advertisements

From September 2000 to October 2001, the Allens ran a television advertisement with the following text:

It says a lot when Richmond lawyers chose three members of single personal injury law firm to be included in the book *Best Lawyers in America,* three of only four Richmond personal injury lawyers for plaintiffs so honored. It says even more when that same firm has had lawyers included since the book began, 18 years running. If you've been injured, call the lawyers other lawyers have called the best. Allen, Allen, Allen, and Allen. The strength of family. The best in personal injury.

(Pls.' Compl. at ¶ 31.) In December 2000, in accordance with the established procedures and at SCOLA's request, the Allens submitted a video copy of the advertisement to SCOLA for review. (Pls.' Br. Opp. Mot. Dismiss, Ex. B, Allen Aff. ¶ 8.) Presumably SCOLA found no problems with the advertisement at that time because no letter of complaint was sent to the Allens. *Id.*

On November 12, 2001, five competitors of the Allen Firm filed a request with the Bar for a legal advertising opinion addressing whether the Allens' advertisement was in violation of any Rules of Professional Conduct. (Pls.' Compl. ¶ 29.) The request presented a hypothetical identical to the Allens' ad, with the exception of the names having been changed. (Pls.' Compl. ¶ 30.) It was obvious to all parties that the request targeted the Allens' advertisement and questioned its propriety, particularly given that the request included as an attachment a copy of the page from *The Best Lawyers in America* listing three of the Allen Firm lawyers in the publication. (Pls.' Compl. ¶ 32.)

On February 5, 2002, Assistant Ethics Counsel for the Bar wrote to W. Coleman Allen, Jr., informing him that SCOLA was reviewing the advertisement and requesting a response from the Allen Firm. (Hr'g Feb. 20, 2003, Pls.' Ex. C.) That letter asked whether the Allens were "willing to correct this ad for future publication/broadcast" and stated that "failure to respond to these requests could result in this matter being referred as a disciplinary complaint." *Id.* On February 25, 2002, W. Coleman Allen, Jr. responded by letter to the Bar, explaining the Allen Firm's position that their ad contained truthful factual representations and was protected by the

First Amendment. (Hr'g Feb. 20, 2003, Pls.' Ex. E.) The Allens ceased airing the particular ad and agreed to meet with SCOLA to determine how to modify the ad to comply with SCOLA's concerns. (Pls.' Br. Opp. Mot. Dismiss, Ex. B, Allen Aff. ¶ 9.) W. Coleman Allen, Jr. met with SCOLA on March 12, 2002, but no agreement was reached. (Pls.' Br. Opp. Mot. Dismiss, Ex. B, Allen Aff. ¶ 10.) According to the Allens, SCOLA represented to W. Coleman Allen, Jr. at that meeting that any reference to being listed in the book *The Best Lawyers in America* would offend SCOLA's interpretation of the prohibition on comparative claims in Rule 7.1 and would be considered a violation of the Rule. (Pls.' Br. Opp. Mot. Dismiss, Ex. B, Allen Aff. ¶ 10–12.) SCOLA issued Legal Advertising Opinion A–0114 ("Opinion I") on June 17, 2002. (Def.'s Br. Supp. Mot. Dismiss, Ex. A.) The Allens learned of the opinion by letter from a competitor sent on June 18, 2002, enclosing the opinion and requesting that the Allen Firm "provide [ ] a response as to your intentions in setting the record straight for what has been deemed to be false and deceptive advertising." (Hr'g Feb. 20, 2003, Pls.' Ex. B; Allen Aff. ¶ 13.)

In September 2002, the Allens began running modified versions of the advertisement that was the subject of the hypothetical and SCOLA's advisory opinion.[4] (Pls.'

---

4. Paragraph 11 of the plaintiffs' complaint recites the following texts of the modified advertisements that began running in September 2002 and continue to run:

(1) RADIO:
  When you've been injured, life can get pretty confusing. You're out of work, you can no longer do what you once could or enjoy what you once enjoyed. To add to you confusion, you're wondering where to find legal help, who to call. A simple fact will help you make the best decision. In the current edition of a national publication called *The Best Lawyers in America*, only

four Richmond lawyers were included, among lawyers who represent injured persons exclusively. Of these four lawyers, three are from one firm—Allen, Allen, Allen, and Allen. For 20 years in a row, lawyers from Allen & Allen have been included in *The Best Lawyers in America*. Everyone you meet at the Allen firm is inspired by that high standard. If you've been injured, call the lawyers who can provide the help you need. Call 353–1200. 353–1200. Allen, Allen, Allen and Allen— the strength of family when you've been injured.
(2) TELEVISION:

Br. Opp. Mot. Dismiss, Ex. B, Allen Aff. ¶ 15–16.) The Allens also filed this lawsuit on September 3, 2002, seeking protection for the advertisements that began running in September 2002. *Id.* On September 19, 2002, the Allens and the Bar reached a tentative settlement. (Pls.' Supplemental Compl. ¶ 2–4, Ex. S–1, S–2.) The terms of that agreement called for SCOLA's chair and the Bar's Ethics Counsel to jointly sign a letter reciting that they approved of the advertisements listed in paragraph 11 of the Allens' complaint. *Id.* It also provided that Opinion I would be revised to clarify that it is ethical for a lawyer to advertise his or her listing in a publication such as *The Best Lawyers in America.* *Id.* Finally, the settlement agreement provided that the revised opinion, if approved by the Allen Firm, would be transmitted to the Council for its approval, modification, or disapproval. *Id.*

On October 24, 2002, the revised version of the opinion was issued ("Opinion II"). (Def.'s Br. Supp. Mot. Dismiss, Ex. B.) Opinion II is substantially the same as Opinion I. It deletes some parts of Opinion I, including some inaccurate statements about how lawyers are selected for publication in the book, and changes the names in the hypothetical. Additionally, whereas Opinion I makes no specific statement regarding whether it is an ethical violation simply to state that a lawyer was selected for publication in the book *The Best Lawyers in America,* Opinion II adds a concluding paragraph that states:

> In conclusion, the Committee opines that it is not unethical for a lawyer to advertise the fact that he or she is listed in a publication entitled *Greatest Lawyers in the Country,* or similar publication. The Committee is of the opinion, however, that it would be unethical for a lawyer to advertise that he or she is "the best" or "the greatest" lawyer in his or her geographical or practice area because he or she is listed in that publication.

(Def.'s Br. Supp. Mot. Dismiss, Ex. B.)

On October 28, 2002, the Bar requested that the Allens submit recordings of each of the three advertisements currently running so that SCOLA could review them. (Pls.' Supplemental Compl. ¶ 6–7, Ex. S–4.) The Allens complied with the request despite the fact that it was not stated in the terms of the settlement agreement. (Pls.' Supplemental Compl. ¶ 6–7.) The Bar also issued a press release and requested the comments of Virginia's Attorney General, as required when an opinion is to be submitted to Council. (Def.'s Br. Supp. Mot. Dismiss, Ex. G.) On December 9, 2002, Attorney General Kilgore issued his comments in the form of a letter to the Bar. It appears that the Attorney General reviewed Opinion II and concluded:

> I find that the Opinion, as currently written, is a correct interpretation of Rule 7.1(a) and passes muster under the restrictions allowed by both First Amendment and antitrust doctrine. I caution, however, against any absolute prohibitions of truthful, verifiable communications in legal advertising. Based upon the facts presented, I do not be-

---

It says a lot when three members of a single personal injury law firm are included in the book *The Best Lawyers in America.* Three of only four Richmond lawyers listed, who represent injured people exclusively. It says even more when that same firm has had lawyers included every year since the book was first published, 20 years ago. If you've been injured, call the lawyers who can provide the help you need. Allen, Allen, Allen and Allen—the strength of family when you've been injured.

(3) TELEVISION:

The book *The Best Lawyers in America* lists only four Richmond lawyers who represent injured people exclusively, 3 of them with one firm: Allen, Allen, Allen & Allen.

(Pls.' Compl. ¶ 11.)

lieve the Committee may absolutely ban an attorney from including the mere statement that he or she has been included in an independently published book entitled *Greatest Lawyers in the Country* in his or her advertisements. (Def.'s Br. Supp. Mot. Dismiss, Ex. I.)

On December 10, 2002, SCOLA issued another revision of the advisory opinion ("Opinion III"). (Def.'s Br. Supp. Mot. Dismiss, Ex. C.) Opinion III modifies the concluding paragraph of Opinion II to state:

> In conclusion, the Committee has not determined whether it is ethical for a lawyer to advertise the fact that he or she is listed in a publication entitled *Greatest Lawyers in the Country,* or similar publication. The Committee believes this broader issue requires further study and will issue an opinion on this point at a later time. However, with respect to the specific hypothetical lawyer advertisement you present in your inquiry, the Committee opines that it would be unethical for a lawyer to advertise that he or she is "the best" or "the greatest" lawyer in his or her geographical or practice area because he or she is listed in that publication.

(Def.'s Br. Supp. Mot. Dismiss, Ex. C.)

All three opinions end with the final sentence: "This opinion is advisory only, based on the facts you presented, and not binding on any court or tribunal." (Def.'s Br. Supp. Mot. Dismiss, Ex. A, B, C.) Additionally, all three opinions identify three statements or phrases from the hypothetical and conclude that all three violate Rule 7.1's prohibition on comparative statements. *Id.* Those three statements are: (1) "call the lawyers other lawyers have called the best;" (2) "The best in personal injury;" and (3) "it says a lot when Richmond lawyers choose three members … to be included in the book *Best Lawyers in America.*" *Id.* Although

these statements were included in the hypothetical submitted to SCOLA for review and were included in the advertisement run by the Allens from 2000 to 2001, none of the advertisements listed in paragraph 11 of the complaint contain any of these statements. (Pls.' Compl. ¶ 11.)

On February 22, 2003, the Bar's Council met and reviewed the three versions of the opinion issued by SCOLA and issued another version of the opinion ("Council Opinion"). (Def.'s Supplemental Br. Supp. Mot. Dismiss, Ex. A.) The Council Opinion is substantially the same as Opinion III, but it deletes one paragraph and modifies the concluding paragraph. (Def.'s Supplemental Br. Supp. Mot. Dismiss, Ex. B.) The deleted paragraph read:

> The Committee further believes that the implication of the advertisement that these three lawyers are "the best" or "the greatest" strictly because of the chosen name of a publication is a non sequitur. This creates an unjustified and unsubstantiated inference for all those listed in the publication. This publication could have been named *The Greatest Lawyers in the World,* however, that would not elevate the status or ability of any lawyer named therein to "even vaster greatness."

(Def.'s Supplemental Br. Supp. Mot. Dismiss, Ex. B.) That deleted paragraph was included in Opinions II and III, and a modified version appeared in Opinion I. (Def.'s Br. Supp. Mot. Dismiss, Ex. A, B, C.) The Council Opinion modified the concluding paragraph in Opinion III to read:

> The Committee further opines that it is not unethical for a lawyer to advertise the fact that he or she is listed in a publication entitled *Greatest Lawyers in the Country,* or similar publication. The Committee cautions, however, that any advertisement which makes statements or claims beyond the fact that the law-

yer is listed in such a publication must comply with Rule 7.1. For example, the Committee is of the opinion that it would be unethical for a lawyer to advertise that he or she is "the best" or "the greatest" lawyer in his or her geographical or practice area merely because he or she is listed in that publication. Likewise, it would be unethical for a law firm to advertise that the firm is "the best" or "the greatest" merely because one or more of its lawyers is listed in the publication.

(Def.'s Supplemental Br. Supp. Mot. Dismiss, Ex. A.)

The Bar represents that it plans to submit the Council Opinion to the Supreme Court of Virginia for review, stating "[i]t is true the Supreme Court of Virginia will have the final word on this issue and could adopt a position different from that taken by Council." (Def.'s Supplemental Reply.)

The Bar's actions since reaching an agreement with the Allens on September 19, 2002, show that the Bar has repudiated the settlement and no longer intends to be bound by its terms.

## II.  ANALYSIS

### A.  The defendant's motion to dismiss pursuant to Rule 12(b)(6)

█ The defendant argues that the plaintiffs' complaint fails to state a claim upon which relief may be granted and that the complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true the allegations in the complaint and construe all inferences in the plaintiffs' favor. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). The purpose of such a motion is to test the sufficiency of the pleadings and not to resolve factual issues or rule on the merits of the claim. *America Online, Inc. v. GreatDeals.Net*,

49 F.Supp.2d 851, 854 (E.D.Va.1999). Therefore, a motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

Here, the plaintiffs allege that they have a First Amendment right to advertise the fact that three of the firm's lawyers are listed in the book *The Best Lawyers in America*. The defendant argues that the Allens' allegations are misplaced because the Bar "has not yet taken the position" that it is unethical to advertise the fact that three of the Allen firm's attorneys are listed in the book *The Best Lawyers in America*. The exact position of the Bar in its various opinions is not determinative, however, because the Allens further allege that the series of advisory opinions, particularly when combined with the Bar's repudiation of the settlement agreement in this matter, prevent the Allens from determining whether its current advertising is permissible under the Bar's interpretation of Rule 7.1 and that the opinions therefore subject the Allens to a concrete threat of disciplinary action. According to the Allens' allegations, the Bar's actions create an impermissible chilling effect on the Allens' right to continue advertising in a manner protected by the First Amendment. The allegations sufficiently state a claim for violation of the Allens' rights under the First and Fourteenth Amendments.

### B.  Defendant's motion to dismiss pursuant to Rule 12(b)(1)

█ The defendant also seeks dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the plaintiffs lack subject matter jurisdiction because they fail to establish that their claim is justiciable. The concept of

justiciability ensures that federal courts review matters only when it is appropriate to do so and when there is a concrete controversy to be decided. In determining whether a justiciable controversy exists, the Court must accept as true all material allegations in the plaintiffs' complaint. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Action for Children's Television v. FCC,* 59 F.3d 1249, 1258 (D.C.Cir.1995). The Court may also consider additional particularized allegations of fact submitted by affidavit or exhibit. *Warth,* 422 U.S. at 501, 95 S.Ct. 2197.

### 1. Standing

Litigants must have a sufficient personal interest in the outcome of the litigation in order to establish standing pursuant to Article III of the Constitution. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The plaintiffs, as the parties invoking federal jurisdiction, must show three elements to establish standing: (1) that they suffered an " 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) that the injury is "fairly traceable to the challenged action of the defendant;" and (3) that the injury is likely to be redressed by a favorable decision by the court. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. at 560–61, 112 S.Ct. 2130).

In the context of First Amendment claims, however, standing requirements are often relaxed. *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 956, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984); *Kemler v. Poston,* 108 F.Supp.2d 529, 535 (E.D.Va.2000). "[C]onstitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations which fall short of a direct prohibition against the exercise of First Amendment rights, but which nonetheless impinge on those rights in an indirect fashion." *Kemler,* 108 F.Supp.2d at 535–36. Even in the First Amendment context, though, a claim of a subjective "chill" that arises "merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruit of those activities, the agency might in the future take some other and additional action detrimental to that individual" is not sufficient to establish standing. *Laird v. Tatum,* 408 U.S. 1, 11, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). Rather, the plaintiff still must show a "specific present objective harm or a threat of specific future harm." *Id.* at 14, 92 S.Ct. 2318. Standing has been found in contexts where "the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging." *Id.* at 11, 92 S.Ct. 2318.

Here, the Bar argues that the Allens have not suffered an actual or threatened injury sufficient to establish standing in this Court. According to the Bar, the Allens lack the necessary injury in fact because SCOLA and Bar Council's opinions are "advisory" and because the Bar has not initiated formal disciplinary proceedings to enforce or attempt to enforce Rule 7.1 as it is interpreted in those opinions. The defendant analogizes the facts here to the situation presented in *Kemler v. Poston.* In that case, two substitute judges sought to vote in political primary elections. 108 F.Supp.2d at 533. An advisory opinion issued at their request by the Judicial Ethics Advisory Committee ("JEAC") stated that voting in such elections would violate the cannons of judicial conduct. *Id.* The court ruled that the plaintiffs lacked standing because any potential injury remained contingent on a

series of events. *Id.* at 538–39. In that case, no action had been taken other than the issuance of the advisory opinion. *Id.* at 533, 538. The JEAC lacked authority to initiate disciplinary proceedings based on its opinions, and its opinions were not binding on the two entities with the power to investigate and prosecute misconduct. *Id.* at 538. Importantly, no action had been taken by the plaintiffs in violation of the advisory opinion at the time the suit was filed and likewise, no action had been taken against them. *Id.* at 533, 538–39. The plaintiffs claimed that they desired to vote in primary elections but they had not done so. *Id.* Although they claimed that they were "chilled" by concern for the consequences of taking an action in violation of the advisory opinions, there was no indication that the disciplinary agency would take action against them if they did, and the court ruled that the plaintiffs' claim of injury was too remote to establish a specific threat of future harm. *Id.* at 538–39.

The same contingencies are not present here and the threat of disciplinary action against the Allens is not remote. The Allens have taken action that the Bar Counsel and a disciplinary committee may find violates the Virginia Rules of Professional Conduct based on the interpretation of those Rules in the advisory opinions of SCOLA and the Council, even though those opinions do not have binding legal effect. Moreover, the opinions specifically and directly target the Allens' advertising. The Allens do not claim an injury because of an opinion addressing conduct that they might, at some point in the future, wish to take.

Additionally, unlike the committee that issued the advisory opinion in *Kemler*, the Bar Council is also responsible for overseeing the disciplinary process of the Bar. Likewise, SCOLA plays a role in the Bar's established system for disciplining attorneys for their advertisements. SCOLA actively polices the legal community's advertising, and SCOLA's website specifically states that attorneys who fail to comply with SCOLA's requests will be referred for disciplinary action. SCOLA's mission statement reflects that disciplinary action will be commenced if a lawyer fails to comply with SCOLA's perceived violation of a rule, and SCOLA's letter to the Allens on February 5, 2002, confirms that SCOLA intended to follow through with the filing of a complaint if the Allens did not modify their advertisement. (Hr'g Feb. 20, 2003, Pls.' Ex. C.) The Allens modified their advertisements since the time that letter was sent, but the threat of formal disciplinary action remains as SCOLA and the Bar have provided no assurance to the Allens that the modified advertisements pass muster.

These differences place the Allens' situation in a different procedural posture than that of the plaintiffs in *Kemler*. The "chill" felt by the Allens is far less speculative, and it is in fact a legitimate fear that future formal disciplinary action may be taken against them. The fact that the legal advertising opinions of the Bar are advisory does not preclude the existence of a present injury to the Allens. The Allens are presently subject to the regulations on legal advertising promulgated by the Virginia Supreme Court and enforced by the Bar, and Bar Counsel can institute disciplinary proceedings at any time without waiting for a complaint to be filed or for the Supreme Court of Virginia to address an issue. The Allens therefore allege a concrete threat of prosecution. The fact that the Bar repudiated the settlement agreement reached in this matter compounds this realistic threat.

In the First Amendment context, plaintiffs are entitled to bring a pre-enforcement suit where they allege the existence

of "an actual and well-founded fear that the law will be enforced against them." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). The Allens have done so here. The injury alleged by the Allens is directly traceable to the actions of the defendant and its issuance of advisory opinions questioning the legality of the Allens' advertisements and subjecting the Allens to the threat of prosecution, and the injury is likely to be redressed by a favorable decision of this Court. Therefore, the Court finds that the Allens' allegations and the factual evidence in support of them establish the elements necessary to create standing in this Court.

### 2. Ripeness

▪ In addition to challenging the plaintiffs' standing before the Court, the defendant argues that the plaintiffs' claim is not ripe.

The underlying principle of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The ripeness of a claim is analyzed in two parts: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Virginia Soc'y for Human Life v. Fed. Election Comm.*, 263 F.3d 379, 390 (4th Cir.2001) (quoting *Abbott Labs.*, 387 U.S. at 148, 87 S.Ct. 1507). Fitness means that the issues to be considered are "purely legal" and further factual development will not aid the court in its resolution. *Id.* The requirement of fitness furthers the agency's interest in finalizing a policy before it is subject to review and

also the court's interest in "avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Kemler*, 108 F.Supp.2d at 540 (quoting *Reg'l Mgmt. Corp., Inc. v. Legal Serv's Corp.*, 186 F.3d 457, 465 (4th Cir.1999)). The court is to "balance these two interests against the potential hardship to a plaintiff from withholding consideration at a particular time." *Id.* The hardship prong serves to "ascertain if the harm that deferring review will cause the [plaintiffs] outweighs the benefits it will bring the agency and the court." *Id.* at 542. Hardship is analyzed based on the totality of the circumstances. *West Virginia Highlands Conservancy, Inc. v. Babbitt*, 161 F.3d 797, 801 (4th Cir.1998).

Like its argument regarding standing, the Bar maintains that the advisory nature of the opinions by SCOLA and the Council prevents the plaintiffs' claim from being ripe. According to the Bar, because further administrative action must be taken before any opinion becomes binding, the plaintiffs' claim is not yet fit for review. Although the Bar's advisory opinions have yet to be finally approved, disapproved, or modified by the Supreme Court of Virginia, that does not preclude the issues before this Court from being ripe at this time. As discussed above with reference to the plaintiffs' standing, the threat of disciplinary action is real and imminent, and disciplinary action is not dependent upon the Supreme Court of Virginia's future review of the advisory opinions. The Bar may begin formal disciplinary proceedings at any time. Moreover, the informal process that occurs prior to filing an official complaint is already in motion, as shown by the Bar's active pursuit of the issue. The Bar has not agreed to forego instituting disciplinary proceedings against the Allens for the particular advertisements cited in their complaint, and there exists a credible threat that the Bar will

attempt to enforce its interpretation of Rule 7.1 against the Allens.

Additionally, the Court must consider that the Allens' claim arises in a First Amendment context where the ripeness requirement is relaxed and "[t]he ultimate test of reviewability is not to be found in an overrefined technique." *Action for Children's Television v. FCC,* 59 F.3d 1249, 1258 (D.C.Cir.1995). *See also Donnangelo v. Myers,* 187 F.3d 629, 1999 WL 565834 (4th Cir.1999) (unpublished). "[T]he possibility that the agency's actions might [ ] run afoul of the first amendment demands prompt judicial scrutiny." *Id.* at 1259. Agency action that creates a legitimate fear of future sanctions will often be sufficient to establish ripeness. *Ohio Forestry Association, Inc. v. Sierra Club,* 523 U.S. 726, 734, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998). Here, the Allens allege that they are threatened with sanctions for speech they claim is protected by the First Amendment. The issue before the Court is purely legal and additional factual development is not necessary to the Court's decision on the merits. Therefore, the Allens' claim is fit for review.

Because the Allens allege a legitimate claim that their speech has been "chilled" by the actions of the Bar, they also satisfy the hardship prong of the ripeness analysis. Under that prong, the Court must consider, under the totality of the circumstances, whether the hardship to the plaintiffs from delaying review outweighs the Bar's interest in completing its administrative process. The Bar asserts that any potential harm to the plaintiffs from deferring review fails to outweigh the Bar's strong interest in finalizing its opinion on the Allens' advertising prior to any judicial review. The Bar has a legitimate interest in monitoring the professional conduct of attorneys, but the Court cannot place too much emphasis on formalities, particularly when, as here, the effects of the Bar's opinions have been felt in a concrete way by the plaintiffs. The infringement of First Amendment freedoms is considered irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The plaintiffs' allegations therefore satisfy the Court that deferring review may subject the plaintiffs to significant hardship.

The plaintiffs satisfy both parts of the ripeness analysis, and the Court finds that their claim is ripe for review.

### 3. Mootness

■ The concept of mootness addresses the same concerns as standing and ripeness, but "the burden of establishing mootness rests on the party raising the issue." *Rhode Island Ass'n of Realtors, Inc. v. Whitehouse,* 199 F.3d 26, 34 (1st Cir.1999). Therefore, the defendant has the burden to show that this suit is moot.

A suit is moot if the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). The concept of mootness ensures that courts address suits that are "definite and concrete, touching the legal relations of parties having adverse legal interests and [ ] a real and substantial controversy admitting of specific relief through a decree of conclusive character as distinguished from an opinion of what the law would be upon a hypothetical statement of facts." *Cedar Coal Co. v. United Mine Workers,* 560 F.2d 1153, 1162 (4th Cir.1977). Additionally, the actual controversy must exist at all stages of the litigation. *Rhode Island Ass'n of Realtors, Inc.,* 199 F.3d at 34. "Even if a justiciable controversy exists when litigation begins, Article III requires a federal court to depart the field if the controversy later abates, that is, if ongoing events have wiped the slate clean or

changed the topography so that the court's opinion would be purely advisory." *Id.* This is exactly what the defendant argues happened here.

The Bar argues that the Allens' claim is now moot because the Council issued its version of opinion A–0114, which states that "it is not unethical" to advertise one's listing in the book *The Best Lawyers in America.* Even with that conclusion as to that issue, the Council Opinion includes the exact same analysis of the three individual statements from the hypothetical included in SCOLA's three opinions. All four opinions declare the statements at issue to be misleading and in violation of Rule 7.1(a)(3). The advertisement texts listed in paragraph 11 of the Allens' complaint alter those three statements, but the advertisements do include more than a mere statement that lawyers are listed in the publication *The Best Lawyers in America.* The existence of all four opinions and the Bar's fluctuating position regarding the Allens' advertising and its compliance with Rule 7.1, combined with the fact that the Bar continues to target the Allens and pursue its inquiry into the propriety of their advertisements despite initially agreeing to a settlement, show that the Allens cannot be certain what the Bar's position will be regarding the totality of the texts listed in paragraph 11. Even though the Council Opinion states that it is not unethical to list one's publication in the book *The Best Lawyers in America,* the Bar's disciplinary arm or SCOLA may yet determine that other statements in the Allens' current advertising violates Rule 7.1. As the Bar continually asserts, its disciplinary arm is not bound by SCOLA or Council's advisory opinions.

Thus, the threat of disciplinary action and the resulting chill imposed on the First Amendment rights of the Allens remain. The Court finds that the defendant fails to show that the Council Opinion renders this matter moot.

## C. The plaintiffs' motion for a preliminary injunction

■ Having established that their claim is justiciable and properly before the Court, the plaintiffs move for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. The plaintiffs' seek to enjoin the Bar from initiating disciplinary proceedings against them for the advertisements listed in paragraph 11 of the complaint pending the outcome of this litigation.

In determining whether a preliminary injunction is warranted, a court must consider the following four factors:

(1) the likelihood of irreparable harm to the plaintiffs if the preliminary injunction is denied,

(2) the likelihood of harm to the defendant if the requested relief is granted,

(3) the likelihood that the plaintiff will succeed on the merits, and

(4) the public interest.

*Direx Israel, Ltd. v. Breakthrough Med. Corp.,* 952 F.2d 802, 812 (4th Cir.1992) (quoting *L.J. By and Through Darr v. Massinga,* 838 F.2d 118, 120 (4th Cir. 1988)). The plaintiffs bear the burden to establish that each factor supports the grant of an injunction. *Id.* The Court must balance the hardships between the plaintiffs and the defendant. *Id.* at 813 "[T]he balance of harm evaluation should precede the determination of the degree by which the plaintiff must establish the likelihood of success on his part." *Id.* The greater the potential harm to the plaintiff, the less strong the plaintiffs' showing of a likelihood of success on the merits must be. Conversely, if the balance of hardships does not tip strongly toward the plaintiffs, they must show a substantial likelihood of success on the merits to justify a preliminary injunction. *Id.* at 812–13.

Here, the plaintiffs allege a threat to their First Amendment freedom to advertise. "The loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. at 373, 96 S.Ct. 2673; *Giovani Carandola, Ltd. v. Bason,* 303 F.3d 507, 520–21 (4th Cir.2002). Because the Allens allege that continuing to engage in commercial speech protected by the First Amendment exposes them to a concrete, particularized, and imminent threat of official sanction, they have shown a likelihood of irreparable injury if the preliminary injunction is not granted and the status quo is not maintained pending the conclusion of this lawsuit.

On the other hand, the Bar faces little threat of injury if the preliminary injunction is granted. According to the Bar, a grant of provisional relief to the Allens would hamstring the disciplinary arm of the Bar and hinder the Bar's important interest in monitoring the professional conduct of Virginia's attorneys. Because the Bar maintains that there is currently no legitimate threat of disciplinary action against the Allens, the Bar argues that even if advertising one's listing in *The Best Lawyers in America* is protected speech, the Allens could present it in such a way that is not constitutionally protected. The Bar further argues that the Bar would suffer serious harm if it was prohibited from disciplining the Allens for such conduct. The Bar is not subject to that risk, however, because the Allens do not seek a blanket protection for all advertising. Their motion for a preliminary injunction seeks protection only for the specific advertisements listed in paragraph 11 of their complaint. Therefore, the Court finds that the Bar is exposed to little, if any, harm from the issuance of a preliminary injunction.

With the balance of hardships decidedly in the plaintiffs' favor, they need not show a strong likelihood of success on the merits. The plaintiffs merely need to raise serious and substantial questions going to the merits that raise fair grounds for litigation. *Direx,* 952 F.2d at 813. Here, the plaintiffs have met that burden. Lawyer advertising is considered commercial speech, the regulation of which is subject to intermediate scrutiny, requiring the state to show that a regulation "directly and materially advances a substantial state interest and is narrowly drawn." *Ficker v. Curran,* 119 F.3d 1150, 1152–53 (4th Cir. 1997). The Supreme Court has summarized the standards applicable to lawyer advertising as follows:

> Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely. But the States may not place an absolute prohibition on certain types of potentially misleading information ... if the information also may be presented in a way that is not deceptive.... Even when communication is not misleading, the State retains some authority to regulate. But the State must assert a substantial interest and the interference with speech must be in proportion to the interest served.

*In re R.M.J.,* 455 U.S. 191, 202, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982). Because the plaintiffs' complaint alleges that the Bar's actions violate these established standards, the plaintiffs make a sufficient showing on the merits of their claim to satisfy their burden under the preliminary injunction standard.

Finally, granting a preliminary injunction is in the public interest. While the

public has a strong interest in the regulation of lawyer advertising and the elimination of misleading advertising, the public also has a strong interest in the protection of First Amendment rights and in the ability to access truthful information about lawyers. Because the Allens' claim is based on the assertion that their advertisements are not misleading and are speech worthy of protection under the First Amendment, the public interest is in favor of granting the preliminary injunction. Moreover, there is no evidence of complaints by members of the public or that maintaining the status quo pending the outcome of this litigation creates a risk that the public will be misled.

Having considered the balance of hardships, the likelihood of success on the merits, and the public interest, the Court finds that a preliminary injunction is warranted.

## III. *CONCLUSION*

For the reasons stated, the Court denies the defendant's motion to dismiss and grants the plaintiffs' motion for a preliminary injunction.

An appropriate Order shall enter.